UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

BRIAN WADE,

        Plaintiff,

     v.                                   Case No. 04-C-0704

DAIMLERCHRYSLER CORPORATION,

        Defendant.

_____

**ORDER**

Plaintiff Brian Wade alleges that his employer DaimlerChrysler Corporation ("DaimlerChrysler") failed to accommodate his disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. Wade also alleges that DaimlerChrysler retaliated against him in violation of the ADA. DaimlerChrysler has filed a motion for summary judgment. For the reasons stated below, the court grants summary judgment with respect to the retaliation claim and denies summary judgment with respect to the failure to accommodate claim.

**BACKGROUND**

DaimlerChrysler owns and operates a facility known as the Kenosha Engine Plant ("KEP") in Kenosha, Wisconsin. Wade has been employed at the KEP since 1979. Wade was a "production operator," working in an assembly line for the bulk of his career. For the last five years, Wade worked as a fork truck operator. Wade developed and was diagnosed with the condition of occupational asthma by Dr. Jordan Fink in 1999. Wade has been assigned restrictions or PQX

codes (Physically Qualified with eXception) by the KEP medical department. Specifically, Wade is to avoid dust, smoke, flumes, odors, and vapors when working in the KEP and wears a respirator anytime he is in the plant. After 2001 and before September 2003, DaimlerChrysler provided Wade with a new respirator every seven to eight days or approximately every 63 hours.

Between May 29 and June 21, 2002, Wade took a medical leave of absence because he was suffering from "emotional distress" as a result of a conflict between he and his supervisor, Gary Legler. When Wade returned to work, his treating health care provider directed that Wade was fit for work but that he should be assigned to a different department because he should not work under Legler's supervision. When Wade returned from medical leave on June 21, 2002, Labor Relations Supervisor Brian French placed Wade in a different department on an engine assembly line. French placed Wade in a different department because of the restriction that had been placed on Wade by a mental health care professional in combination with seniority provisions of the collective bargaining agreement and existing restrictions that required Wade to work only in a no vapor area. Wade complained that the location of his new department prevented him from going outside to clean his respirator. Wade was assigned an additional PQX which allowed for frequent restroom breaks, and it was understood that Wade could use the additional time to maintain his respirator. Although Wade was assigned to a no vapor area, Wade believed that he was exposed to coolants and vapors that drifted over from other areas and that his respirator was

getting clogged. Wade requested from French that he be able to change his respirator on a daily basis. French denied Wade's request.

On June 27, 2002, Wade was physically examined by his doctor, Dr. Fink. Wade told Dr. Fink that the charcoal filter in his respirator was becoming clogged, that he was having trouble breathing, and that DaimlerChrysler would not let him change his respirator on a daily basis. Dr. Fink wrote a letter dated June 27, 2002, addressed to Chrysler Corporation Occupational Health (the "letter") that stated, "Brian Wade has occupational asthma. He uses a respirator in order to work. He needs to change the charcoal filter in his respirator daily. He notes respiratory symptoms when he is not able to change it on a daily basis. If you have further questions feel free to call me at 414-266-6450." (DaimlerChrysler's Mot. for Summ. J. Ex. A, Ex. 5.)

Wade submitted the letter to appropriate personnel at the KEP. On June 28, 2002, Wade met with French, Jean Melvin, the Industrial Hygienist at the KEP, Dr. Terry Zehr, the plant physician, and union representatives. French was the final decision maker regarding whether Wade could change his respirator daily. Both Melvin and Dr. Zehr opined that changing the respirator on a daily basis was not necessary to protect Wade. No one from DaimlerChrysler contacted Dr. Fink regarding the letter that he wrote. French concluded that Wade did not need to change the charcoal filter in his respirator daily and that DaimlerChrysler would not have to follow Dr. Fink's orders. French determined that Wade be allowed to change his respirator on a weekly basis.

From August 1, 2002 to November 11, 2002, Wade went on a medical leave of absence following complaints to the KEP medical department of increasing respiratory symptoms. On November 25, 2002, after a physician opined that Wade was able to work with Legler, Wade's former supervisor, Wade was returned to his prior position of a fork truck operator under Legler's supervision. From April 26, 2003, to September 11, 2003, Wade went on another medical leave of absence following complaints of increased respiratory distress.

From the time that Wade returned to work in September 2003, DaimlerChrysler allowed Wade to change his respirator daily. DaimlerChrysler gives Wade five new respirators every week and Wade prepares the respirator in his car before work. Procuring the respirators for the week takes 10 minutes and does not interrupt any plant processes. Since Wade has been allowed to change his respirator daily, he has not taken any medical leaves of absence.

Wade alleges that he was forced to take medical leaves of absence because DaimlerChrysler did not allow him to change his respirator daily and that, as a result of the medical leaves of absence, he suffered damages in the form of lost wages, benefits, expenses, insurance, advancement opportunities, training, overtime, and emotional pain and suffering. When Wade was on the two medical leaves of absence, he received Sickness and Accident benefits equivalent to 60% of his regular wages. As a result of his medical leaves of absence, Wade did not lose any health benefits, seniority, or wage increases pursuant to a collective bargaining agreement.

**ANALYSIS**

Summary judgment is appropriate where the movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Material facts" are those facts which "might affect the outcome of the suit," and a material fact is "genuine" if a reasonable finder of fact could find in favor the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate where a party has failed to make "a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 256-57. A party opposing summary judgment may not rest upon the mere allegations or denials of the adverse party's pleading, but must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). Any doubt as to the existence of a material fact is to be resolved against the moving party. *Anderson*, 477 U.S. at 255 (1986).

I.  Failure to accommodate

There are two types of discrimination claims under the ADA. *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 572 (7th Cir. 2001). The first type is for disparate treatment which arises from the language in the ADA prohibiting employers from "limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee." 42 U.S.C. § 121112(b)(1); *Hoffman*, 256 F.3d at 572. The second type is for

failure to accommodate which arises from language in the ADA requiring employers to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual." 42 U.S.C. § 12112(b)(5)(A); *Hoffman*, 256 F.3d at 572. To establish a claim under the ADA for failure to accommodate an individual's disability, a plaintiff must show that: (1) he is a qualified individual with a disability; (2) the employer was aware of his disability; and (3) the employer failed to reasonably accommodate the disability. *E.E.O.C. v. Sears, Roebuck, & Co.*, 417 F.3d 789, 797 (7th Cir. 2005); *Stevens v. Illinois Dept. of Transp.*, 210 F.3d 732, 736 (7th Cir. 2000); 42 U.S.C. § 12112(b)(5)(A); *see also Dvorak v. Mostardi Platt Associates, Inc.*, 289 F.3d 479, 483 (7th Cir. 2002).

In this case, DaimlerChrysler advances three arguments in opposition to Wade's failure to accommodate claim: 1) Wade is not disabled within the meaning of the ADA; 2) Wade is not a qualified individual with a disability; and 3) Wade has suffered no adverse employment action. For the reasons stated below, the court is obliged to reject these arguments.

A.  Disabled within the meaning of the ADA

There is a genuine issue of material fact that Wade is disabled within the meaning of the ADA. The ADA defines disability as: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(2). Wade argues that he has breathing

problems that are severe and that substantially limit major life activities, including breathing, working, and performing manual tasks. (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J. 3-6.)

DaimlerChrysler does not contest the following facts regarding Wade's condition: Wade has suffered from occupational asthma since 1999; occupational asthma can be chronic and persist for a lifetime even after exposure to the offending environment is terminated; Wade uses Flovent, Albuterol and avoidance of irritants to treat his occupational asthma; Wade must avoid smoke, dust, strong fumes, odors, and vapors; Wade was examined by his physician on a frequent basis; and DaimlerChrysler was aware, at all times relevant to this action, that Wade has a breathing impairment. Moreover, Wade contends that it is difficult for him to breathe when he is around aerated oil, diesel, oil from fried foods, and someone who smokes cigarettes. Wade contends that he has a 25% reduction in lung capacity. Wade contends that he had difficulty breathing when he was not allowed to change his respirator every day. These contentions could allow a reasonable jury to conclude that Wade's ability to breathe and work in a broad class of jobs is substantially limited. *See Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 196 (2002) ("In determining whether an individual is substantially limited in a major life activity, the regulations instruct that the following factors should be considered: "[t]he nature and severity of the impairment; [t]he duration or expected duration of the impairment; and [t]he

- 7 -
Case 2:04-cv-00704-JPS   Filed 02/02/06   Page 7 of 14   Document 17

permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment.").

DaimlerChrysler argues that Wade's occupational asthma only disrupts Wade's ability to perform one particular job. (*See* Def.'s Mem. of Law in Supp. of Its Mot. for Summ. J. 9-11; Def.'s Reply Mem. in Supp. of Its Mot. for Summ. J. 1-2.) The defendant, however, does not support its argument with any citation to evidence in the record that Wade's physical impairments are so minimal. *See* Civil L.R. 56.2(d) ("All factual assertions made in any brief must be supported by both specific citations to evidentiary materials in the record and the corresponding stipulated fact or proposed finding of fact.") After examining each of the defendant's proposed findings of fact ("DPFOF"), the only proposed finding of fact that arguably supports DaimlerChrysler's position is DPFOF ¶ 76: "Wade's pulmonary function improves when he is away from the KEP or when he uses a respirator and deteriorates *only* when he is at work and not able to change his respirator on a daily basis. (Fink Dep. 27)." DPFOF ¶ 76 (emphasis added). The most important part of this proposed finding and the part most helpful to DaimlerChrysler is the word "only." If the plaintiff's condition deteriorates *only* in one particular job, the plaintiff is not substantially limited in the major life activity of working. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491 (2002); *Webb v. Clyde L. Choate Mental Health and Development Center*, 230 F.3d 991, 998 (7th Cir. 2000). After reading Dr. Fink's testimony, however, it is clear that Dr. Fink did not testify that Wade's ability to breathe deteriorates *only* when he

works as a fork truck operator at the KEP; in fact, "only" appears nowhere in Dr. Fink's testimony. (*See* Fink Dep. 27.) Therefore, summary judgment is inappropriate.

B.  Qualified individual with a disability

There is a genuine issue of material fact that Wade is a qualified individual with a disability. An individual is qualified for protection under the ADA if she can "with or without reasonable accommodation . . . perform the essential functions of the employment position that [she] holds or desires." 42 U.S.C. § 12111(8). Therefore, the ADA is designed to protect someone who is *able* to perform the duties of her position with appropriate accommodations–it does not protect individuals who are unable to work. *Morgan v. Joint Admin. Bd.*, 268 F.3d 456, 459 (7th Cir. 2001).

DaimlerChrysler argues that Wade is not a qualified individual with a disability because Wade took unscheduled leaves of absence when he was allowed to change his respirator on a weekly basis. (Def.'s Br. 13; Def.'s Reply Br. 3.) If Wade can perform the essential functions of his job with a reasonable accommodation, he is a "qualified individual with a disability." 42 U.S.C. § 12111(8); *Bultemeyer v. Fort Wayne Community Schools*, 100 F.3d 1281, 1285 (7th Cir. 1996) ("Bultemeyer may have been qualified, because he may have been able to perform the essential functions of the job *with reasonable accommodation.*") The court finds that there is genuine issue of material fact regarding whether Wade is a qualified individual with a disability. DaimlerChrysler

still employs Wade, and Wade has not taken medical leave since September 2003 when he was allowed to change his respirator on a daily basis.

DaimlerChrysler responds that changing a respirator on a daily basis is not a reasonable accommodation because it is unnecessary. "Whether a requested accommodation is reasonable or not is a highly fact-specific inquiry and requires balancing the needs of the parties." *Oconomowoc Residential Programs, Inc. v. City of Milwaukee*, 300 F.3d 775, 784 (7th Cir. 2002). The Seventh Circuit defines the term "accommodation" within the meaning of the ADA to mean some concrete, specific action taken by an employer that enables a disabled person to perform the essential functions of his position. *See Vande Zande v. Wis. Dep't of Admin.*, 44 F.3d 538, 542 (7th Cir. 1995); *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996); *see also* 42 U.S.C. § 12112(9). In the Seventh Circuit, an employee must show a proposed "accommodation is reasonable in the sense of both efficacious and of proportional costs." *Vande Zande*, 44 F.3d at 543.

In this case, Wade has shown that a genuine issue of material fact exists regarding whether changing his respirator on a daily basis is a reasonable accommodation. Wade argues that changing his respirator on a daily basis is both affordable and efficacious. The respirator masks cost DaimlerChrysler $12-$18 each, and Wade has not missed work since he was permitted to change his respirator daily. DaimlerChrysler concedes that Wade's request would not create an economic burden but that changing filters on a daily basis is

unnecessary. (Def.'s Reply Br. 4.) DaimlerChrysler presents the testimony of its industrial hygienist that a respirator generally works just as well on Day 5 as on Day 1. (DPFOF ¶ 53.) Wade and his doctor testify that changing his respirator on a weekly basis did not effectively control the symptoms of his breathing problems. (Plaintiff's Proposed Findings of Fact ("PPFOF") ¶¶ 31, 33, 172.) Wade and his doctor testify that allowing Wade to change his respirator on a daily basis has allowed Wade to perform his job without any problems. (PPFOF ¶¶ 32, 182.) The court finds that there is a genuine issue of material fact regarding whether changing a respirator on a daily basis is efficacious and, therefore, a reasonable accommodation. DaimlerChrysler is not entitled to summary judgment based upon its argument that Wade is not a qualified individual with a disability.

C.  Adverse employment action

In its initial brief, DaimlerChrysler argues that Wade suffered no adverse employment action in connection with his failure to accommodate claim. (Def.'s Br. 14.) DaimlerChrysler's entire argument is set forth in the following paragraph:

> It is undisputed that Wade has never been disciplined or lost any benefits or seniority as a result of his asthma. Although he has had two periods of medical leave, there is no evidence that this was the result of DaimlerChrysler's acts or omissions in failing to reasonably accommodate Wade's condition. Wade has failed to establish a *prima facie* case of disability discrimination and, therefore, DaimlerChrysler is entitled to summary judgment in its favor.

(*Id.*)

A plaintiff alleging a claim for failure to accommodate is not required to allege an adverse employment action. *See Rauen v. U.S. Tobacco Mfg. Ltd.*

*Partnership*, 319 F.3d 891, 895-96 (7th Cir. 2003) ("Therefore, to prevail on her ADA claim Rauen must show that she has a disability, that she is 'otherwise qualified' for the job, and that her employer refused to make a 'reasonable accommodation' for her disability."); *Stevens*, 210 F.3d at 736 ("To make out a claim under the ADA, an individual must show . . . that the employer took an adverse job action against her because of her disability *or* failed to make a reasonable accommodation."); *Brown v. City of North Chicago*, 2005 WL 475160, at *4 (N.D. Ill. Feb. 28, 2005); *Nawrot v. CPC International*, 259 F. Supp. 2d 716, 721-23 (N.D. Ill. 2003); *Nichols v. Unison Indus., Inc.*, 2001 WL 849528, at *6 (N.D. Ill. July 24, 2001). The failure to accommodate is itself an act of discrimination that violates the ADA. 42 U.S.C. § 12112(b)(5)(A).

In any event, DaimlerChrysler did not repeat this argument with respect to the plaintiff's failure to accommodate claim in its reply brief and, therefore, waived the issue.

II. Retaliation

The ADA sets forth the following anti-retaliation provision:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 12203(a). An employee bringing an ADA retaliation claim may present either direct evidence of discrimination or indirect evidence under the burden-shifting method set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792

(1973). *See Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1117 (7th Cir. 2001). An employee bringing an ADA retaliation claim based on indirect evidence must first present a prima facie case of retaliation by demonstrating that: (1) he engaged in statutorily protected expression; (2) he suffered an adverse action; and (3) there is a causal link between the protected expression and the adverse action. *Id.*

The court must grant the defendant's motion for summary judgment with respect to the plaintiff's retaliation. The plaintiff has not shown that a genuine issue of material fact exists regarding a causal link between a protected expression and an adverse action. In his complaint, the plaintiff purports to state a retaliation claim by stating:

> The allegations more particularly described above constituted intentional discrimination against Wade by retaliating against him, forcing him to vacate DC's plant and threatening the termination of his employment *on the basis of his real, recorded, and perceived disabilities* . . . .

(Compl. ¶ 23) (emphasis added.) In other words, the plaintiff alleges that the defendant took adverse action against him because he has a disability, not because the plaintiff opposed disability discrimination. In paragraph 23 of his complaint, the plaintiff alleges only disability discrimination, not retaliation.

In its motion for summary judgment, the defendant argues that the plaintiff does not claim that he suffered adverse action in retaliation for having engaged in protected expression, e.g., making a charge under the ADA. The plaintiff abandons his retaliation claim in his brief in opposition to the defendant's motion

for summary judgment. The plaintiff only mentions retaliation in connection with the defendant's alleged failure to restrict smoking at the KEP in 2003 to designated areas only. (Pl.'s Br. 18-19.) Without any analysis of protected expression, adverse employment action, or a causal link between the two, the plaintiff asserts that the defendant "retaliat[ed] against him for exercising his rights under the ADA." (Pl.'s Br. 19.) The plaintiff must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). Because the plaintiff abandoned his retaliation claim, the defendant is entitled to summary judgment with respect to the retaliation claim.

Accordingly,

**IT IS ORDERED** that the defendant's motion for summary judgment be and the same is hereby **GRANTED in part and DENIED in part**; the court grants summary judgment with respect to the plaintiff's retaliation claim and denies summary judgment with respect to the failure to accommodate claim.

Dated at Milwaukee, Wisconsin, this __2nd__ day of February, 2006.

BY THE COURT:

s/ J. P. Stadtmueller
J. P. Stadtmueller
U.S. District Judge